The next case today is Miguel Rodriguez-Severino v. UTC Aerospace Systems, appeal number 20-1901. Attorney Frontera, please introduce yourself for the record and proceed with your argument. Yes, good afternoon. My name is Juan Manuel Frontera-Azuao. I represent the appellant in this case, Mr. Rodriguez-Severino, and I would like to reserve three minutes for rebuttal. Okay. The appeal in this case is based in substantive arguments and procedure arguments with respect to Rule 56 application. I wanted to begin with the substantive argument because I want to stress out the similarities of this case with the case of Burlington Northern and Santa Fe from the United States Supreme Court that established the standard for retaliation under Title VII. As we all know, the standard in order to consider whether retaliation or a materially adverse employment action was taken under the retaliation provision, it is that it will be considered an adverse employment action if the same will dissuade a reasonable worker from making or supporting a charge of discrimination. In that case, in the Burlington Northern case, the complainant was removed from forklift duty to a standard truck labor task after complaining of such discrimination. As a result of that, a month later, she filed a charge before the EOC. While that charge was being investigated, in December, she filed a second charge before the EOC because her supervisor had placed her under surveillance and was monitoring her daily activities. Then she was suspended 37 days for insubordination. She filed an internal grievance, and the company investigated and decided that what she did was not insubordination and restated her and paid her salary back. Then she filed a third EOC charge based on that suspension of insubordination, although she was restated. In this case, the district court, in stating that there was no material facts or there was not an employment action or a materially adverse employment action, stated that the court notes, as defendant Kathleen points out, that plaintiff presented three separate charges of retaliation before the EOC and one before vets. Therefore, it can hardly be said that the actions complained of were sufficiently harmful to the plaintiff from making the various charges of discrimination and retaliation that he made. See addendum of the avalanche at page 52 to 53. As this quote from the decision and order and the court in this case that we are appealing reveals that the court misunderstood the standard because in the case of Northern... Four minutes remaining, four minutes. Counsel, excuse me. Suppose we agree with you that that was perhaps an unfortunate observation, not really helpful. The court does systematically go through the supposed adverse employment actions that might deter a reasonable employee from seeking relief and dismisses all of those. So let's focus on that. Why don't you focus on those? I think those are on page... I made a note of what page... It's there in that long decision. Could you please focus on those rather than this particular one? One of the reasons of the main reasons that the court rejects plaintiff claims and establishes that a reasonable jury could not find in his favor is because the court disregarded all of plaintiff 99 factual statements stating that they were not supported by evidence admissible in the record. While the majority of those 99 factual statements were supported by the sworn statement of the penalty of perjury that were the EOC charges filed before the EOC charges. Okay, counsel, but in that respect, in that respect, you have to deal with local rule 56, and there's an issue as to compliance with that rule. So can you address also that while you address Judge Lopez's... The circuit has been evenly clear, so... And it's our belief that we comply, your honor. We make specific... We're talking about our statement of uncontested facts. The court disregarded the 99 factual statements that we made that we said they were uncontroverted. And upon those facts, we established that there is enough controversy in this case, your honor, for a jury to determine whether there was a materially adverse employment action. The court disregarded all of them because they were not supported by admissible evidence when they were supported by admissible evidence. The other issue is that... Let me interrupt you briefly also. You have to have admissible evidence, but also pinpoint specific evidence to the record. Isn't there an issue also with that? Well, the court stated... The court identified five statements that we could not specifically cite, and there's a footnote in the opinion and order. The court only identified five where we could not specifically pinpoint to evidence in the record. From 164 that the defendants made, the court identified five. The others, the court disregarded because allegedly they were not supported by admissible evidence where they were because we cited the EOC charges that are on some statement of the penalty of perjury. Counsel, what is the... I should know the answer to this, but I don't. What's the standard of review that we apply when a district court judge says that there were all of these failures to comply with Local Rule 56? What standard of review do we apply to that decision? Well, Rule 56, for summary judgment, is de novo. I understand that, but this specific... I do understand that. This specific ruling, it's a big deal because... That's why we submitted to the court, Your Honor, a specific table in our brief, making a specific determination as to where we think the court failed in doing what it had to do with that. Is that a de novo? Do we review that de novo? Is it a piece of discretion? Is it substantial? Well, Your Honor, I believe it would be de novo. You will be in the same position as the district court. And yet, that seems... I understand why you would say that, but the district court judges in Puerto Rico, I mean, they live with this rule all the time. They have to deal with it all the time. I mean, why? It seems to me that they're... I understand that. I understand that, Your Honor. They're dealing with some deference. I understand that, Your Honor. But the district court also misunderstood Rule 56 when it states that the EOC charges are only allegations or mere allegations as the complaint where they were not. They are not. They are clearly not, Your Honor. So, when the district court concluded that EOC charges... That's time. Are... Can I finish that sentence? Yes, please. ...are in the same position as mere allegations in a complaint, the district court misunderstood what the EOC charges are and misunderstood as we established the Burlington Northern requirements for a retaliation complaint. Any other questions? Yes. Why aren't EOC charges... You're talking about the charging document. It can be sworn or penalty of perjury, but so can a complaint. What is the difference between both? They're not... The charge itself is not conclusive. Well, the facts alleged in an EOC charge are under penalty of perjury in the same manner. You could do the same manner in a complaint or a statement under penalty of perjury to overcome a summary judgment motion. Sure, sure. But the court... The court... If a complaint is not verified or sworn, the court... A plaintiff cannot use the mere allegations of the complaint to oppose summary judgment. While if the complaint is sworn, you can use the specific allegations of facts of a complaint in order to oppose summary judgment because it will be admissible as evidence as sworn testimony. Thank you, counsel. You have to reserve some time. Thank you. At this time, Attorney Frontera, if you could please mute your audio and video, and Attorney Rivera-Arce, if you could go ahead and introduce yourself on the record to begin. Thank you. Good afternoon, Your Honors. Attorney Miguel Rivera-Arce on behalf of defendant Apelli, UTC Aerospace Systems. And, Counsel, so I don't interrupt you. The last question I posed to opposing counsel was why should or should not EOC charges be considered, you know, to overcome a summary judgment motion. So you can intertwine that in your argument at some point. I'd appreciate it. Thank you. I definitely will. And I'll put this case in perspective, and that actually interwinds with your question. You know, this is, putting it in perspective, this is a case that morphed from a retaliation claim because of an internal complaint to a discrimination claim because of national origin, a national origin that nobody knew about, and then to discrimination and retaliation because of his service in National Guard. All of these charges were dismissed by the EOC and the Vets Office. And then when analyzed, they were properly dismissed by the district court in a well-reasoned and properly supported opinion. With regards to the EEOC complaint, he did not, plaintiff did not comply at all with Local Rule 56. This is, as you said, something that local judges deal with on a daily basis. And on our brief, we actually go into detail into those alleged problems with the determinations of the district court. And there are none. There's no admissible evidence. We're talking about conclusory allegations, speculation. Well, he talks about, he talks about, clearly there's a specific denial by any of your clients that they knew about the first complaint to the Ombudsman until he's self-made aware in a meeting later on. But he says that they must have identified him for a couple of reasons. One, there were only 10 people at the meeting, and if five people confirmed, that only left five others, so they could have narrowed it down. But more importantly, he says they must have because his supervisor's behavior towards him changed, leaving the inference that he must have known. What's wrong with that? There is direct case law, even from this court, stating that the aggressor, or the retaliator in this case, has to actually know. And this cannot be based on mere speculation. Excuse me. Counselor, a reasonable inference isn't speculation if we find it to be a reasonable inference from the evidence. Yes, of course. So I'm trying to figure out why isn't this a reasonable inference versus speculation? First of all, because we presented evidence that this is a confidential program where he filed this complaint with the company's Ombudsman in the U.S., continental U.S., not at his work site. There was absolutely no proof whatsoever to contradict the statements from both the supervisors and the HR personnel that they didn't know the identity of the person. And with regards to the five out of ten people – You're not answering. He is saying that the evidence is the change of behavior, the reasonable inference of which is that his supervisor must have known. And when we go into detail into those alleged incidents where his behavior changed, which is, again, a subjective indication from plaintiff, you realize that these are simply mere inconveniences, things that happen on a daily workplace that a plaintiff conveniently converts or tries to create this controversy where he was allegedly being retaliated. And that could be seen across all the different complaints. This is a plaintiff that never, ever – and we went through every single one of those alleged incidents. He doesn't have any proof. He even – talking about adverse employment actions, to put it in perspective, he talks about being disciplined, and he didn't receive one disciplinary action during all the time that's in question. And then he had to recant what he said. He says that he was suspended from work for three days as a disciplinary measure. Are you saying he made that up? That never happened? That sounds like a very specific factual claim. It is a very specific – it is not an actual suspension. There's testimony – Soren's testimony indicated that the reason for not allowing him back to work, to return to work after a leave of absence due to sick leave, was because he had not complied with all the documentation that the company requires in order to come back. But he says he did, so why isn't that a credibility issue? He said he did supply all the paperwork that was required. And as the district court points out, he does not show any evidence to support his statement that he did. Does your client – did your client tell the district court what paperwork was missing that you say was missing? Yes. We included the policies that we have in place. We included the communications between the parties. And again, to put it in perspective, this is not a suspension. He characterizes it as a suspension. It is a return to work where every single employee has to go through, and they have to go through the infirmary, submit all the paperwork, and actually be allowed to work. That is not a thing that happened just this once, and that's actually something that he did. Here, could you just tell me what was missing? Yes. He did not have medical certifications to cover the extent of the medical leave for his release. You may proceed. Okay. Again, this is a matter of, like many courts have said, this is a lot of hot air. We're talking about every single – first of all, there's no evidence that the supervisor knew about this whatsoever. All right. Let's get specific again. He says that he wasn't invited to certain meetings that would have been beneficial to his advancement. Yes, and we do address those in our brief, and they are addressed, actually, in this court opinion. We're talking about one or two incidents where he thinks that he was not invited, but in his deposition testimony, he admitted that he did not express any interest in going to those meetings. Some of those meetings took place in the first shift. He was assigned to the third shift. He wasn't present at the plant at that moment. So he was assigned to the third shift, but that still didn't mean that his supervisor didn't ask him to meet with him at 8 o'clock in the morning, hours after his shift had ended. So what is the difference? Well, the difference is precisely that when your supervisor asks you to stay up for one or two hours just so that they can meet, it is an expression of one of the parties stating, I am interested in you staying so that we can talk personally. So how does that differ from being invited to a meeting that takes place that's on a different shift? Well, he did not point to one specific incident where he was not invited per se, and when he was confronted in his deposition, and we point in our citations to specific deposition testimony, he admitted that he'd never, never talked to anyone about those trainings. Well, there's a difference between never expressing an interest and never being invited. Yeah, there is a difference. Again, it all depends on the characterization of what events happen. Are you saying that he was invited to these meetings that he complains of, one specifically where people from important people came in and he was the only one who didn't get a chance to meet with them? That is precisely one of the examples of... Was he invited to that one? Yes, everyone knew about that visit. Everyone knew about that visit. He was waiting for some kind of special invitation, I guess. He did not come forward and speak with his supervisor. Did other people get an invitation? I'm sorry? Did other people specifically get an invitation? That is not something that I can attest to here right now. Counsel, what is the standard of review that we apply to the determinations by the district court judge that Local Rule 56 was not complied with? What's the standard of review? Yeah, it is my belief that that would be an abuse of discretion. Everything else would be the novel review. Okay. The Rule 56 determinations here were very expansive. I mean, it really had the effect of significantly diminishing the ability of the plaintiff to put into dispute various assertions made in support of the motion for summary judgment. So, to what extent is your ability to argue that there really are no genuine issues of material fact in dispute? To what extent was that argument advanced by this Rule 56 determination of the district court judge that there was no compliance with Local Rule 56? My sense is that it put the appellate in almost an unwinnable position in light of that Rule 56 determination. Would you agree? No, I wouldn't agree and the district court actually considers even though it dismisses the statements made by plaintiff because there were a mere repetition of and citations of the EEOC charge, the allegations. That's all there is there and they go in and they consider and even this report actually determined that even considering those allegations, there's nothing in the record that would actually contradict the legitimate business reasons that put forth the employer with regards to everything, the whole chronology of events and everything that happened. If I may, I also want to mention that the Burlington case that was cited by plaintiff, as you know, is completely different from this case where he did not put forth any evidence that his transfer was inferior in any way. To the contrary, he was actually transferred to the first ship, which is the one he wanted and there is an admission within our statement of facts precisely pointed out there at the same level and he was providing the same level of assistance in his functions, remaining with his salary intact, actually received salary increases and there was no adverse employment action. Are there any other questions? Let me just, when he was transferred, were there any types of professional opportunities that he was denied being transferred to this other component? None? No, your honor. Okay, thank you. Actually, he admits that it was a very prestigious, the OPEX department within this very sophisticated operation of aerospace manufacturing is a very prestigious department that actually works hand in hand with the EH&S department, with the materials department and with everyone else. Thank you. Thank you, attorney Rivera. At this time, please mute your audio and video and would attorney Frontera reintroduce himself on the record to begin his three minute rebuttal. Yes, this is attorney Frontera for rebuttal. In this case, there is specific allegations as to the changing behavior for plaintiff's supervisor. Plaintiff began working in 2015 alongside with this supervisor. They did not have any problems working together from summer 2015 until April 2016 when everything began to go south. And on April, specifically on April, Mr. Del Toro was assigned the investigation that Mr. Rodriguez Severino asked the Ombudsman Office. And Mr. Del Toro was a human resources officer from Santa Isabel. Then everything went south from there until plaintiff was transferred to the OPEX project where plaintiff worked without any issues with the supervisors and could work there without any other issues. So are you alleging that that transfer was an adverse employment action? Well, your honor, my client, Mike, let me put this in perspective. The EHS office is a very specific and specialized office in environmental health and security of manufacturing. And being a professional with that studies, if you're taken out of that office and put in a special project apart that doesn't work daily with the EHS office and the opportunity that it has to develop as an EHS officer in a manufacturing plant. Well, it is my client's position that he was curtailed in gaining experience and development in what was his profession and his studies, EHS officer, when he was moved to the OPEX project. And as to that, that is detrimental for him and he sees that as a dissuasion on the Burlington Northern case. But that's not the only factual issue that my client addresses as employment, a material employment action. A diverse of discrete actions that take place also between November 2016 from his 30 OC charge until the summer of 2017. Specific and discrete actions when taken together, your honor. That's time. It reached the levels of Burlington Northern requirements for adverse employment action. Judge Lopez, did you have a question? Just very quickly. The internal complaint to the ombudsman, that had nothing to do, I mean, that was all about your client's unhappiness with the way in which his supervisor had reacted to an off-color joke told at some kind of meeting. And there was no suggestion there that he felt he was being discriminated against on the basis of national origin, color, anything like that. That entered the case for the first time with that first EEOC charge. That is the first time that there was any claim of national origin discrimination. Is that correct? Yes, your honor. I was not at his attorney at that point in time, and he filed the EEOC charge by himself. It's my understanding. And that claim was not part of this complaint. He abandoned that in the EEOC process. What we allege in this complaint is retaliation under Title VII and the part of the USERRA that we also, we didn't appeal the part of the USERRA before this court. And the retaliation is on the basis of what? The retaliation is on the basis of the internal complaint that he filed because he was opposing what he believed was a conduct that breached sexual, it was sexual harassment conduct under Title VII. And after that, for the filing of the EEOC charge in November and the EEOC charge in January and the EEOC charge in June. All right. Thank you. Thank you, Counselor. Thank you very much. That concludes argument in this case. Attorney Frontera and Attorney Rivera, you should disconnect from the hearing at this time.